# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| INFORMATION ASSOCIATED WITH THE | ) |
| GOOGLE ACCOUNT | ) |
| 'a1discountautocare@gmail.com' | ) |

Case No.   2:23-mj-356

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT 'a1discountautocare@gmail.com' THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC AND GOOGLE PAYMENT CORPORATION

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*
Property that constitutes evidence of the commission of and/or property designed or intended for use or which is or has been used as a means to commit criminal offenses as described in Attachments A and B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Possess with the Intent to Distribute Controlled Substances |

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*William Jake VonEssen*

*Applicant's signature*

William Jake VonEssen, Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   6/8/2023

Chelsey M. Vascura
United States Magistrate Judge

*Judge's signature*

City and state:  Columbus, Ohio

Chelsey M. Vascura U.S. MAGISTRATE JUDGE

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
GOOGLE ACCOUNT
'a1discountautocare@gmail.com' THAT IS
STORED AT PREMISES CONTROLLED
BY GOOGLE LLC AND GOOGLE
PAYMENT CORPORATION

Case No. ___2:23-mj-356___

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, William Jake VonEssen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account (a1discountautocare@gmail.com) that is stored at premises owned, maintained, controlled, or operated by Google LLC and Google Payment Corporation (hereinafter referred to as "Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since January of 2022. As such, I am an "investigative or law enforcement officer" of the

United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.  I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878.  I hold a Bachelor's Degree in Aerospace from Middle Tennessee State University.  I have undergone the following training:

a.  I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, VA that included (but was not limited to) training in the following areas: surveillance, undercover operations, report writing, confidential source management, drug identification, legal principles, search warrant operations, case initiation and development, interview and interrogation, defensive tactics, physical training, and firearms proficiency.  I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

b.  Additionally, as a DEA Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures, searching for evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas.

c.  I have completed the DEA's Money Laundering Seminar, which is a three-day course in Quantico, VA that included training in the following areas: common money laundering schemes, money laundering techniques, the relationship between drug trafficking and terrorism financing, Chinese money laundering, utilization of the Financial Crimes Enforcement Network (FINCEN), specific

2

money laundering violations (structuring, bulk cash smuggling, avoiding

reporting requirements, international money laundering, etc.), virtual currency

money laundering, and asset identification/tracing.

3.     The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of 21 U.S.C. § 846 have been committed by

John ABDALLA.  There is also probable cause to search the information described in

Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further

described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States that has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     In July of 2022 investigators with the DEA Columbus District Office (CDO)

began a criminal drug investigation into John ABDALLA.  Mainly, investigators have conducted

financial analysis, cellular telephone toll analysis, and surveillance on ABDALLA and as a

3

result, have determined that ABDALLA is a suspected drug trafficker and money launderer. In 2004, ABDALLA was convicted on a Federal Conspiracy to Possess with the Intent to Distribute Pseudoephedrine charge in Indiana as a result of a DEA investigation. Currently, ABDALLA resides in Dublin, OH and is the owner of an auto repair shop in Columbus, OH called A1 DISCOUNT AUTO CARE.

7. Based on my training and experience, I know that drug traffickers and money launderers often utilize money transmitter services like Western Union to send or receive money from drug sources of supply, criminal associates, drug couriers, and/or drug customers. In January of 2022, ABDALLA began to send suspicious wire transactions to several individuals utilizing Western Union, which is a registered money transmitter based in Englewood, CO. From January 2022 to April of 2022, ABDALLA sent forty-eight (48) wire transactions that were flagged as suspicious by Western Union with various payee names, payee phone numbers, payee locations, and other identifying information. These transactions were documented in an internal Western Union report, investigators with the CDO secured details about these transactions through a Federal Grand Jury subpoena in May of 2023. The amounts of these wire transactions varied between $100 and $900 and totaled $12,925. Although nine separate individuals were listed as payee names among the wire transactions, only seven unique phone numbers are listed among the payee phone numbers. Two of those seven phone numbers were 614-772-6511 and 616-772-6511. 614-772-6511 is the listed sender phone number for ABDALLA on all of the wire transactions, and is a phone number investigators know to be utilized by ABDALLA. 616-772-6511 is likely a typo made by ABDALLA due to its relative similarity to his phone number and the fact that it is only listed on one wire transaction. The payee names listed for wire transactions with 614-772-6511 and 616-772-651 were Charles

4

KALTWASSER, Paul A. WASHINGTON, and Isa MUSLEH. Additionally, another payee phone number is listed as 213-548-0324 with payee name Jessica Renee DAWSON, both of which are also only listed once, and is the only wire transaction paid in Los Angeles, CA. The other forty-seven (47) wire transactions were successfully paid in the metro area of Detroit, MI. Redacting the above mentioned wire transactions leaves thirty-nine (39) wire transactions totaling $10,345 made to the remaining four payee telephone numbers.

8.     These thirty-nine (39) wire transactions, twenty-five (25) of them (which totaled $6,805) were sent to payee telephone number 586-443-3034. Per cellular telephone subscriber information gained through an administrative subpoena, the listed subscriber for 586-443-3034 is Ricardo ABUAMSHA. ABDALLA is also in frequent contact with ABUAMSHA per cellular telephone tolls of 614-772-6511 gained through an administrative subpoena. ABUAMSHA is not listed as the payee name on any of the wire transactions that list his payee phone number. The listed payee names with wire transactions containing payee phone number 586-443-3034 were KALTWASSER, MUSLEH, Karen Jane CARLISI, Karen Marie GREGORY, Danielle L. LANG, Paul A. WASHINGTON, and Charles J. LITTLE. ABUAMSHA has been convicted of State of Michigan drug-related charges three times, with the most recent conviction in 2006.

9.     The remaining wire transactions, eight of them, (which totaled $1,840) were sent to telephone number 989-297-5594. Per cellular telephone subscriber information gained through an administrative subpoena, the listed subscriber for 989-297-5594 is Charles KALTWASSER. KALTWASSER is the listed payee name on all eight wire transactions sent to 989-297-5594, however KALTWASSER is the listed payee name for several wire transactions

sent to 586-443-3034. KALTWASSER was convicted of a State of New York Loitering Unlawful Use of Controlled Substance charge in 1972.

10. The remaining transactions, five of them (which totaled $1,400) were sent to payee phone number 313-282-4648. Per cellular telephone subscriber information gained through an administrative subpoena, the listed subscriber for 313-282-4648 is 'Mista FRIENDLE.' All five of the wire transactions list Isiah JACKSON as the payee name. Investigators believe JACKSON is the user of 313-282-4648 since the subscriber information is likely factious (the listed customer address is a P.O. Box in Lenexa, KS and the name appears to be a misspelling of 'Mister Friendly'). Additionally, JACKSON has twelve convictions in the State of Michigan for drug-related charges, with the most recent conviction in 2022.

11. Per investigators with the DEA Detroit Division Office (Detroit DO) in Detroit, MI, JACKSON is a known drug trafficker and high ranking member of the 'Shotgun Crips' gang in Detroit, MI. The 'Shotgun Crips' are a criminal street gang that, among other crimes, are known to engage in drug trafficking. On May 16, 2023, investigators received more recent intelligence from the Eastpointe Police Department (EPD) in Eastpointe, MI about JACKSON. EPD stated that JACKSON is a known poly-drug trafficker, and had recently sold a small quantity of suspected methamphetamine to a confidential source in the Detroit, MI area. EPD also informed investigators that JACKSON was the user of telephone number 313-587-4304. Per information gained from an administrative subpoena, ABDALLA (utilizing 614-772-6511) was in contact with JACKSON on that telephone number four times from December of 2022 to January of 2023.

12. The remaining transaction is one wire transaction (which totaled $300) sent to payee phone number 734-462-0396. Per cellular telephone subscriber information gained through an administrative subpoena, the listed subscriber for 734-462-0396 is Isa MUSLEH. MUSLEH is also listed as the payee name for one transaction that lists 586-443-3034 as the payee phone number.

13. I know based on my training and experience, that the above wire transaction analysis is indicative of structuring, which is conduct common among drug traffickers and money launderers. In drug trafficking, structuring is commonly done to avoid the $10,000 Bulk Currency Transaction Reporting threshold so as to avoid law enforcement attention. By spreading out what would have been a +$10,000 transaction into several smaller transactions, one could thwart the system and avoid the transaction reporting requirement, which would also possibly be a violation of 31 USC 5324. ABDALLA appears to be structuring by spreading out the transactions to avoid the reporting threshold, providing misleading payee information by mixing up names and phone numbers, and sometimes listing his own phone number as both the sender and payee phone number. Finally, three of the five listed payee phone numbers belong to people who have a criminal history that includes criminal drug-related convictions.

14. Per cellular telephone subscriber information gained through an administrative subpoena, investigators are aware that 614-401-0777 (hereinafter referred to as 0777) is cellular telephone number utilized by ABDALLA, in addition to 614-772-6511 (hereinafter referred to as 6511). Investigators have conducted toll analysis of 0777 and 6511 and have discovered that ABDALLA is in contact with several suspicious individuals. The following cellular telephone

toll and subscriber information mentioned was obtained through administrative subpoenas served by investigators with the CDO, other DEA offices, or other law enforcement agencies that have made the data available to the DEA on the respective phone numbers unless otherwise noted.

15.    From July of 2019 to December of 2019, ABDALLA (utilizing 6511) was in contact with 248-667-6346 fifteen times.  ABDALLA (utilizing 6511) again contacted 248-667-6346 three times in May of 2023.  Per information from a law enforcement database, 248-667-6346 at the time was being utilized by Khleif Boulus ABOU-JOUDEH.  ABOU-JOUDEH is a known fentanyl trafficker in the Detroit, MI area.  ABOU-JOUDEH was arrested on a Federal Possession with the Intent to Distribute Fentanyl charge in December of 2019 by investigators with the Detroit DO, but was not convicted.  However, ABOU-JOUDEH appeared to be convicted on two State of Michigan Dangerous Drugs charges in 2017.

16.    From December of 2021 to January of 2022 ABDALLA (utilizing 6511) was in contact with 614-625-9713 five times from December of 2021 to January of 2022.  ABDALLA (utilizing 6511) again contacted 614-625-9713 one time in May of 2023.  Per information from a law enforcement database, the user of 614-625-9713 at that time was Larry COCHRAN. COCHRAN is a known methamphetamine trafficker in the Columbus, OH area.  In June of 2022, COCHRAN sold one and a half ounces of suspected methamphetamine to an undercover law enforcement officer in an operation coordinated by investigators with the CDO.

17.    ABDALLA (utilizing 6511) was in contact with 614-783-6037 thirty-three (33) times from July of 2022 to April of 2023.  Per information gained from an administrative subpoena, the user of 614-783-6037 appears to be Cary RUNYAN.  RUNYAN is a suspected drug trafficker in the Columbus, OH area based on intelligence from the Ohio Department of

8

Corrections Intelligence Services Unit (ISU).  Calls that inmates make/receive are recorded and kept by the ISU and are normally available for review if the investigative need arises.  The following is a portion from a recorded 'ViaPath' wire communication between Anthony EVANS and RUNYAN on May 29, 2022.  At the time, EVANS was an inmate in the Ohio Department of Corrections system at the Madison Correctional Institution.

> RUNYAN: I called them. Them people never called me, man. I talked to the bitch. The bitch knows me too.

> EVANS: That number looks familiar. Who is that?

> RUNYAN: It's some bitch named Mary. She's like, "Are you from up North?" I'm like, "Yeah." She's like "I know you." And I'm like, "From where?" And she's like, "You'll see when you see me." She stays up north off of Karl-Morse. I'm supposed to meet her in the morning.

> EVANS: You know you ain't gotta do that.

> RUNYAN: What do you mean?

> EVANS: For the… you know, everything that a mother fucker had to go through.

> RUNYAN: Oh, yeah?

> EVANS: Yeah, just take all the donut boxes and just throw them in like three garbage bags.

> RUNYAN: Okay.

18.　　Based on my training and experience, it's likely that that the 'donut boxes' EVANS' is referring to is code for marijuana.  The context of 'throwing them' into 'garbage bags' leads investigators to believe that the product they're referring to is relatively light, but bulky.  Large quantities of marijuana are bulky, but not dense, plus the volume of a kilogram of

marijuana varies greatly and is generally much larger than the volume of one kilogram of cocaine or methamphetamine. However, EVANS may have also been referring to illicit pharmaceuticals or U.S. Currency (specifically, cash), but it's less likely. With this context, the conversation appears to show EVANS directing RUNYAN to conduct a drug transaction with 'Mary.' RUNYAN has been convicted of state of Ohio drug-related charges three times per his criminal history.

19.     ABDALLA (utilizing 6511) was in contact with 614-622-1661 twenty-six (26) times from February of 2023 to May of 2023. Per information gained from an administrative subpoena, the user of 614-622-1661 is Dwayne STEWART. STEWART has been convicted of Federal drug charges twice, and state of Ohio drug charges three times per his criminal history. Additionally, STEWART was recently arrested in March of 2023 as a result of an investigation by the Columbus Police Department (CPD) in Columbus, OH for the following state of Ohio charges: three counts of drug trafficking, two counts of drug possession, one count of engaging of corrupt activity, and one count of having weapons under disability. As a result of the investigation, CPD learned the following about STEWART and shared it with CDO investigators on May 15, 2023:

   a.  STEWART is a known gang member of a local street gang in the Columbus, OH area called the 'Milo-Grogan' street gang. The 'Milo-Grogan' street gang operates mainly in the Milo-Grogan neighborhood of Columbus, OH and are known to be involved in drug trafficking and violent crime.

   b.  STEWART is a known marijuana and illicit pharmaceutical trafficker, who operated at least eight 'trap' houses in the Columbus, OH area that were identified

10

by CPD during their investigation. Based on my training and experience, I know that 'trap' houses act as locations where drugs are stored so they can be sold to drug customers that visit the 'trap' location by drug traffickers staying/working at the 'trap.'

20.     ABDALLA (utilizing both 0777 and 6511) was in contact with 614-323-5935 one hundred forty-six (146) times from September of 2022 to April of 2023. Per information gained from an administrative subpoena, the user of 614-323-5935 is Maria STROTHER. STROTHER (utilizing 614-678-2040) was also in contact with Shavonne HARRIS ten times from September of 2020 to November of 2021. HARRIS is a known criminal associate of Gregory PRUDE, and both are suspected drug traffickers in the Columbus, OH area. PRUDE has been previously convicted on a Federal Conspiracy to Possess with the Intent to Distribute Marijuana charge in 2010.

21.     ABDALLA (utilizing 6511) was in contact with 859-621-8220 once on January 1, 2023. Per open-source research and information from a law enforcement database, investigators believe 859-621-8220 is being utilized by Maher ABRAHIM. ABDALLA (utilizing 6511) was in contact with 859-621-4940 seven times from July of 2022 to May of 2023. Per a law enforcement database, investigators believe 859-621-8220 is being utilized by Gamal SHALASH. ABRAHIM and SHALASH were both convicted on a Federal Conspiracy to Distribute Marijuana charge in 2006 and are known marijuana traffickers in the Lexington, KY area.

22.     On April 6, 2023, at approximately 5:45 a.m. investigators with the CDO established surveillance on ABDALLA's residence located at 7742 Sanbrooke Road, Dublin,

OH, 43016. At approximately 9:11 a.m., investigators observed ABDALLA appear from the residence and enter the driver's seat of a maroon 2014 Chevrolet Silverado 1500 bearing Ohio license plate JCU3380 registered to John ABDALLA. ABDALLA then departed the area in the Chevrolet and drove to a parking lot at 1187 Williams Road, Columbus, OH, 43207. ABDALLA JCU3380 shortly after parking, opened all four doors on it, and began to search for something inside it. As ABDALLA searched, a tan 2000 Toyota Camry bearing Ohio license plate HLE2914 registered to Jada JAMESON arrived in the parking lot and parked next to JCU3380. An unknown black male (UM1) exited HLE2914 soon after parking and appeared to engage in conversation with ABDALLA. ABDALLA produced a large thick gray plastic bag from JCU3380 and began carrying it as he talked with UM1. After a few moments of conversation, investigators observed UM1 use a key to enter a business, to which ABDALLA followed UM1 inside that business, still carrying the large thick gray plastic bag. Due to the distance of observing investigators, it is unclear if they entered the business associated with 1187 or 1189 Williams Road, Columbus, OH, 43207.

23. On the same day, investigators observed a silver 2009 Ford Taurus X bearing Ohio license plate GYL6281 registered to Edreese MUSTAFA enter the parking lot in-front of 1187 Williams Road, Columbus, OH, 43207. Shortly after GYL6281 arrived, ABDALLA exited 1187/1189 Williams Road, Columbus, OH, 43207, still carrying the large thick gray plastic bag and appeared to engage the driver of GYL6281 in conversation through an open passenger door window for a few moments. ABDALLA then entered GYL6281, still carrying the large gray thick plastic bag. Shortly thereafter, GYL6281 departed the area, surveillance was maintained on GYL6281. Investigators observed GYL6281 arrive at A1 DISCOUNT AUTO located at 4429 E. Main Street, Columbus, OH, 43213. At that time, investigators confirmed that the driver

of GYL6281 appeared to be the registered owner, MUSTAFA, based on the driver bearing a likeness to MUSTAFA's Ohio Bureau of Motor Vehicles driver's license photo which was made available through a law enforcement database.  ABDALLA exited GYL6281 with the large gray thick plastic bag and entered A1 DISCOUNT AUTO.  Investigators know that ABDALLA is the owner of A1 DISCOUNT AUTO based on public Ohio business records made available by the Ohio Secretary of State's website.  GYL6281 then departed the area and surveillance was shortly thereafter terminated.  MUSTAFA was arrested on a State of Ohio Aggravated Drug Trafficking charge in 2012, stemming from an investigation conducted by the Franklin County Sheriff's Office (FCSO) in Columbus, OH involving synthetic marijuana and bath salts, but was not convicted.

24.     On May 7, 2023, officers with the CPD conducted a traffic stop on a rental vehicle being driven by Anthony JOHNSON near the intersection of Lockbourne Road and Moler Road in Columbus, OH.  JOHNSON is a known methamphetamine trafficker in the Columbus, OH area, and suspected street gang member.  During the course of the traffic stop, officers with the CPD detected the odor of marijuana and as a result, detained JOHNSON and conducted a probable cause search of the rental vehicle.  Officers located a small quantity of marijuana, three cellular telephones, and $21,340 in U.S. Currency in the vehicle.  The U.S. Currency was seized by investigators with the CDO via a Federal seizure warrant issued by the Southern District of Ohio on May 9, 2023 and is suspected to be drug proceeds.  Per information gained from an administrative subpoena, the user of 614-615-9717 in JOHNSON.  Per toll analysis on 614-615-9717, CDO investigators learned the following:

     a.   RUNYAN was in contact with JOHNSON five times from February of 2023 to March of 2023.

     b.   STEWART was in contact with JOHNSON sixteen times from February of 2023 to March of 2023.

     c.   STROTHER was in contact with JOHNSON forty-five (45) times from July of 2022 to August of 2022.

25.    Based on my training and experience, I know that drug traffickers and money launderers often utilize cellular telephones to conduct nearly all facets of drug trafficking.  This includes but is not limited to utilizing cellular telephones to plan drug transactions, communicate with drug sources of supply, drug couriers, and drug customers, discuss drug quality, pricing, and trafficking techniques, and generally facilitate their criminal drug enterprise.  I also know that drug traffickers and money launderers often utilize cellular telephone 'services' provided by the cellular telephone's software and provider to facilitate these facets of drug trafficking.

## **BACKGROUND CONCERNING GOOGLE**[1]

26.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications.

---

[1]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

27.    In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices. Based on information gained from a Federal grand jury subpoena from the Southern District of Ohio, investigators know that 'a1discountautocare@gmail.com' is an email address associated with International Mobile Equipment Identifier (IMEI) 352358112724089, which investigators believe is a cellular device that utilizes the Google OS.  Per administrative subpoena returns, investigators know that the telephone number associated with IMEI 352358112724089 is 614-772-6511.

28.    Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

29.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below.  In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after

15

the description of services below. Investigators have recently served Google with a subpoena in

order to specifically learn which Google services the account utilizes. Investigators have

determined that the following services utilized by the account are of interest to the investigation.

a. Google provides email services (called Gmail) to Google Accounts through email
   addresses at gmail.com or enterprise email addresses hosted by Google. Gmail
   can be accessed through a web browser or a mobile application. Additional email
   addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses)
   can be associated with the Google Account by the user. Google preserves emails
   associated with a Google Account indefinitely, unless the user deletes them.

b. Google provides an address book for Google Accounts through Google Contacts.
   Google Contacts stores contacts the user affirmatively adds to the address book,
   as well as contacts the user has interacted with in Google products. Google
   Contacts can store up to 25,000 contacts. Users can send messages to more than
   one contact at a time by manually creating a group within Google Contacts or
   communicate with an email distribution list called a Google Group. Users have
   the option to sync their Android mobile phone or device address book with their
   account so it is stored in Google Contacts. Google preserves contacts indefinitely,
   unless the user deletes them. Contacts can be accessed from the same browser
   window as other Google products like Gmail and Calendar.

c. Google provides several messaging services including Duo, Messages, Hangouts,
   Meet, and Chat. These services enable real-time text, voice, and/or video
   communications through browsers and mobile applications, and also allow users
   to send and receive text messages, videos, photos, locations, links, and contacts.

16

Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

d.  Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

e.  Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

f.  Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range

17

of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

g. A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including

18

any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

30.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

31.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

32.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account

via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

33.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

34.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  For example, drug traffickers and money launderers sometimes send, receive, or take pictures of drug product and/or money to examine the quality or provide proof of supply to associates, supplies, and/or customers.  Drug traffickers and money launderers often utilize messaging apps to coordinate drug transactions and discuss drug business with criminal associates.  Drug traffickers and money launderers often travel frequently for the purposes of transporting drugs or drug proceeds.  Finally, drug traffickers and money launderers sometimes utilize programs and apps to organize and keep records of drug transactions and ledgers.

35.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.  For example, drug traffickers and money launderers often use messaging systems to facilitate drug transaction details, such as the date, time, and location.

36.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

37.     Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. Specifically, ABDALLA appears to conduct wire transactions often, apps downloaded from the Google Play store may reveal what banking services, money transmitter, and financial services he utilizes.  I also know that drug traffickers and money launderers often utilize alternative messaging apps and services in attempt to conceal their messaging from conventional 'texting' and 'calling.'  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

38.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services.  In my

21

training and experience, such information may constitute evidence of the crimes under

investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

39.     Based on the forgoing, I request that the Court issue the proposed search warrant.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  The government will execute this warrant

by serving the warrant on Google.  Because the warrant will be served on Google, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

41.     I further request that the Court order that all papers in support of this application,

including the affidavit and search warrant, be sealed until further order of the Court.  These

documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation.  Accordingly, there is good cause to seal these documents

because their premature disclosure may give targets an opportunity to flee/continue flight from

prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates,

or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*William Jake VonEssen*

William Jake VonEssen
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on ____June 8_____, 2023

*Chelsey M. Vascura*

Honorable Chelsey M. Vascura
UNITED STATES MAGISTRATE JUDGE

23

## **ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with 'a1discountautocare@gmail.com'

("the Account") that is stored at premises owned, maintained, controlled, or operated by Google

LLC and Google Payment Corporation, a company headquartered at 1600 Amphitheatre

Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Google LLC and Google Payment Corporation ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information 01/01/2022 (or as far back as the records are available, if the records are not retained as far back as 01/01/2022) to present day, unless otherwise indicated:

a.     Email headers, access, activity, deletion, and change logs as relevant, accounts associated by cookie, SMS number, recovery email, or IP address, and Google play store records of applications purchases or installed on IMEI 352358112724089;

b.     Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

c.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails. All forwarding or fetching accounts relating to the accounts;

d.     Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

e.     The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and

RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

f.   The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

g.   All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

h.   All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

i.   All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history; and

Google is hereby ordered to disclose the above information to the government within **14** days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 21 USC 846, those violations involving John ABDALLA and occurring after 01/01/2022, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Evidence indicating the sale, distribution, transportation and/or manufacture of controlled substances, and/or the conspiracy to commit the sale, distribution, and/or manufacture of such;

b.  Evidence indicating money laundering of proceeds derived from drug trafficking, and/or the conspiracy to commit money laundering;

c.  Evidence indicating the facilitation and/or furtherance of a criminal drug enterprise;

d.  Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

e.  Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.  The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

g.  The identity of the person(s) who communicated with the Account about matters relating to drug trafficking, the laundering of drug proceeds, and/or the facilitation of drug trafficking, including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google LLC ("Google"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b. such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                           Signature